In the Matter of the Claim of DONNA VEEDER, as Widow of GARY L. VEEDER, Deceased, Appellant, v NEW YORK STATE POLICE DEPARTMENT et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [928 NYS2d 89]—

Peters, J.P.

Decedent had been employed as a forensic scientist for approximately 31 years by the employer. In April 2008, the forensic lab where decedent worked underwent a reaccreditation process, during the course of which an audit uncovered an inconsistency in the fiber proficiency tests that were regularly performed by decedent. An investigation into the issue was commenced by the employer and, over the course of three days, several meetings were held between decedent and his supervisors to discuss the inconsistencies in the test results. After decedent advised his supervisors that he had skipped a step in the fiber test analysis procedure and, therefore, was noncompliant in performing the test, a "nonconforming work inquiry" was initiated by the employer. Decedent subsequently stopped going to work and weeks later, on May 23, 2008, committed suicide.

Claimant, decedent's wife, filed an application for workers' compensation death benefits, claiming that decedent's suicide resulted from his depressive state which was caused by certain improper actions taken by the employer during the investigation. Following a hearing, a Workers' Compensation Law Judge disallowed the claim. The Workers' Compensation Board affirmed, concluding that Workers' Compensation Law § 2 (7) barred the claim since the employer's actions were made in good faith and were the result of "[a] lawful personnel decision involving an investigation and potential disciplinary action." Claimant appeals.

Workers' Compensation Law § 2 (7) provides, in relevant part, that "[t]he terms 'injury' and 'personal injury' shall not include an injury which is solely mental and is based on workrelated stress if such mental injury is a direct consequence of a lawful personnel decision involving a disciplinary action, work evaluation, job transfer, demotion, or termination taken in good faith by the employer" (*see Matter of DePaoli v Great A & P Tea Co.*, 94 NY2d 377, 380 [2000]; *Matter of Aubel v Price Chopper*, 307 AD2d 691, 691 [2003]). Initially, we reject claimant's contention that, because decedent committed suicide, his injuries cannot be "solely mental" and Workers' Compensation Law § 2 (7) is therefore inapplicable. The unrefuted psychiatric evidence contained in the record, as well as the suicide letters, make clear that decedent's suicide was predominantly the product of the depression and stress he experienced from the employer's inquiry into the inconsistencies in his fiber analysis tests. Thus, if claimant's work-related stress is not compensable under Workers' Compensation Law § 2 (7), it necessarily follows that any physical injury that resulted therefrom cannot be compensable either (*see Matter of Kinney v Prudential Ins. Co.*, 270 AD2d 781, 783 [2000]; *Matter of Dockum v Syroco, Inc.*, 260 AD2d 688, 690 [1999], *lv denied* 93 NY2d 811 [1999]).

Claimant's primary argument is that the employer's actions in this case were not undertaken in the context of a "disciplinary action" within the purview of the statute and, therefore, the Board's finding lacks substantial evidence in the record. We agree.

One of claimant's supervisors unequivocally testified that there was no disciplinary action underway during the inquiry into the methods used by decedent in conducting the fiber tests. Rather, this supervisor indicated that the purpose of the meetings, which were cordial and nonaccusatory, was to review the procedures employed by decedent in conducting the testing and to look into ways for the laboratory to improve its testing

methods. Similarly, the employer's deputy counsel explained that the meetings with decedent were strictly a part of the employer's quality review process, which required that an inquiry be undertaken to "figure out what the anomaly was, and come up with a way to fix it." He explained that, after decedent admitted that he failed to follow proper procedures in performing the fiber test analysis, a personnel investigation into decedent's actions was commenced. Although, as part of this investigation, decedent was required to give a statement about the events, the deputy counsel explained that such a statement is required in all but the most extraordinary circumstances, and that the investigation served solely a fact-finding, rather than a disciplinary, purpose. Inasmuch as there is no evidence that any formal disciplinary charges had been initiated or contemplated against decedent during the relevant time, substantial evidence does not support the Board's finding that decedent's work-related stress was a direct consequence of a personnel decision involving a disciplinary action (*see Matter of Ford v Unity House of Troy*, 292 AD2d 717, 718 [2002], *lv denied* 98 NY2d 610 [2002]; *compare Matter of Meyers v Teachers Coll., Columbia Univ.*, 199 AD2d 623, 623-624 [1993]).

Having found the employer's actions to constitute a "disciplinary action" under Workers' Compensation Law § 2 (7), the Board did not reach the employer's alternative argument that its actions in that regard could also be deemed an evaluation of decedent's work under the statute, and that the stress experienced by decedent was no greater than that normally encountered in the work environment (*see Matter of Potter v Curtis Lbr. Co., Inc.*, 10 AD3d 819, 820 [2004]; *Matter of Charlotten v New York State Police*, 286 AD2d 849, 849-850 [2001]). As such, we remit the matter to the Board for resolution of these issues (*cf. Matter of Chmura v T&J Painting Co., Inc.*, 64 AD3d 987, 988 [2009]; *Matter of Deritis v New Tech Energy Sys.*, 306 AD2d 773, 774 [2003]; *Matter of Martin v Fulton City School Dist.*, 300 AD2d 901, 902 [2002]).

Spain, Lahtinen, Malone Jr. and McCarthy, JJ., concur. Ordered that the decision is reversed, without costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.