■ In the Matter of the Claim of BERNADETTE BRITTAIN, Respondent, v NEW YORK STATE INSURANCE DEPARTMENT et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent. [968 NYS2d 683]—

McCarthy, J. Appeal from a decision of the Workers' Compensation Board, filed November 18, 2011, which ruled that claimant sustained a compensable injury.

Claimant performed human resources work for the employer that required her to frequently travel between her office and New York City, and the employer covered her travel and lodging expenses. The Inspector General investigated an anonymous complaint regarding claimant's travel and determined that she

---

had committed no wrongdoing, but referred the matter to the Comptroller to assess the tax implications of the employer's travel reimbursement practices. The Comptroller ultimately determined that—to correct the employer's reimbursement practices that violated Internal Revenue Service rules—claimant should be deemed to have earned over $100,000 in additional income as a result of those practices, and that she was responsible for paying back taxes and penalties on that amount. There is no dispute that she incurred a psychic injury upon learning of the Comptroller's findings, and she thereafter applied for workers' compensation benefits. The Workers' Compensation Board rejected the argument advanced by the employer and its workers' compensation carrier that her claim was barred by Workers' Compensation Law § 2 (7), and this appeal ensued.

We affirm. A workers' compensation claim for psychic injury stemming from work-related stress is not compensable if it was "a direct consequence of a lawful personnel decision involving a disciplinary action, work evaluation, job transfer, demotion, or termination taken in good faith by the employer" (Workers' Compensation Law § 2 [7]; *accord Matter of DePaoli v Great A & P Tea Co.*, 94 NY2d 377, 380 [2000]; *see Matter of Brickner v New York State Dept. of Transp.*, 284 AD2d 829, 829 [2001], *lv denied* 98 NY2d 601 [2002]). Claimant, however, was not accused of wrongdoing by the employer. Instead, her mental injuries stemmed from the serious financial liabilities she incurred as a result of a review of the employer's reimbursement practices. Inasmuch as that audit was not "aimed at" claimant, substantial evidence supports the Board's determination that her resulting mental injury was not the direct consequence of a disciplinary action or work evaluation (*Matter of DePaoli v Great A & P Tea Co.*, 94 NY2d at 380; *see Matter of Veeder v New York State Police Dept.*, 86 AD3d 762, 763-764 [2011]; *cf. Matter of Kinney v Prudential Ins. Co.*, 270 AD2d 781, 782-783 [2000]).

Additionally, we will not disturb the Board's determination that the stress that claimant experienced was greater than that generally experienced by similarly situated workers in a normal work environment, as that factual finding is supported by substantial evidence (*compare Matter of Young v Pentax Precision Instrument Corp.*, 57 AD3d 1323, 1324 [2008]). The stress from being advised that she was responsible for taxes and penalties on over $100,000 of imputed income due to her employer's mistaken reimbursement practices, with no wrongdoing on her own part, along with her knowledge that she was not financially

in a position to handle that substantial liability, was not a normal occurrence in the workplace and exceeded the typical stress associated with claimant's position (*see Matter of Smith v Albany County Sheriff's Dept.*, 82 AD3d 1334, 1335 [2011], *lv denied* 17 NY3d 770 [2011]).

Rose, J.P., and Spain, J., concur.

Egan Jr., J. (dissenting). I respectfully dissent. The investigation conducted by the Inspector General in this matter was not an informal, internal review process designed to examine the employer's reimbursement policies and procedures in general (*compare Matter of Veeder v New York State Police Dept.*, 86 AD3d 762, 763-764 [2011]). Rather, the underlying investigation was initiated in response to a specific—albeit anonymous—complaint lodged with respect to claimant and her work-related travel. Hence, notwithstanding the fact that such investigation ultimately did not culminate in disciplinary charges being lodged against claimant, I nonetheless am of the view that claimant's resulting workers' compensation claim has its genesis in—and is the "direct consequence" of—"a lawful personnel decision involving a disciplinary action . . . taken in good faith by the employer" (Workers' Compensation Law § 2 [7]; *see Matter of DePaoli v Great A & P Tea Co.*, 94 NY2d 377, 380 [2000]). For that reason, I am of the view that the underlying claim is barred by Workers' Compensation Law § 2 (7).

Additionally, I am not persuaded that the stress experienced by claimant here was greater than that incurred by similarly situated workers in a normal work environment (*see generally Matter of Spencer v Time Warner Cable*, 278 AD2d 622, 623 [2000], *lv denied* 96 NY2d 706 [2001]). Simply put, employees receive distressing news at work each and every day—be it the denial of a long-awaited vacation or promotion, the assumption of additional duties without a corresponding increase in salary, the assignment to a new supervisor or department or, as in this case, unforeseen tax consequences associated with the employee's compensation. While such bad news, in turn, may prompt an employee to become sufficiently upset to walk out of his or her workplace and never return, it does not necessarily entitle the employee to workers' compensation benefits and, in my view, an award of benefits is not warranted here. Accordingly, I would reverse the Workers' Compensation Board's decision.

Ordered that the decision is affirmed, with costs to claimant.